**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| Faith J. Jackson | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. _____ |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| President John M. Rudley | § | |
| Defendant Dannye R. Holley, | § | Jury Trial Demanded |
| Defendants | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES JUDGE OF SAID COURT,

COMES NOW, Faith J. Jackson, Plaintiff herein, complaining of Texas Southern University (TSU), President John M. Rudley in his personal capacity, and Defendant Dannye R. Holley in his personal, herein, and in support shows the Court the following:

**I.**
**NATURE OF THE CASE**

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, *et. seq.* and breach of contract, Texas common law.

2. Plaintiff alleges that the Defendants subjected Plaintiff to discrimination based on sex / gender.

**II.**
**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on a federal questions under Title VII, 42 U.S.C. §2000e, *et seq.*, a federal statute,

1

pursuant to 28 U.S.C. § 1343 and because the action is based on deprivation of the Plaintiff's

right under color of state law against a federal law providing for equal rights.

4.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the Texas

common law claims form part of the same case or controversy under Article III of the United

States Constitution.

5.   Venue is proper in the United States District Court for the Southern District of Texas based on

28 U.S.C. § 1391(b)(2) because the unlawful employment practices are alleged to have been

committed wholly in Houston, Harris County, Texas, located within the United States District

Court for the Southern District of Texas.  Forum to litigate the claims of Plaintiff is also proper

in the United States District Court for the Southern District of Texas because Defendants have

a physical presence in Houston, Harris County, Texas.

## III.
## PARTIES AND SERVICE

6.   The Plaintiff: Plaintiff Faith J. Jackson is a female citizen of the United States of America

and an individual who resides in Houston, Harris County, Texas.

7.   Defendant Texas Southern University ("TSU") is a public university and an instrumentality

of the State of Texas and may be served by service upon the President of the university, Dr.

John M. Rudley, at 3100 Cleburne Street, Hannah Hall, Room 220, Houston, Texas, 77004

or wherever he may be found or by service upon any vice-president of the university,

wherever such person may be found.

8.   Defendant John M. Rudley is the President of Texas Southern University and may be served

with process at 3100 Cleburne Street, Hannah Hall, Room 220, Houston, Texas, 77004 or

wherever he may be found.

2

9.  Defendant Dannye R. Holley is the Dean of Thurgood Marshall School of Law of Texas Southern University and may be served with process at 3100 Cleburne Street, Thurgood Marshal School of Law, Houston, Texas, 77004 or wherever he may be found.

## IV.
## ADMINISTRATIVE PROCEDURE

10. On or about September 9, 2013, Plaintiff filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") as required prior to filing this suit.

11. On or about January 9, 2014, Plaintiff amended her charge of discrimination with the Equal Employment Opportunity Commission to include a charge of retaliation.

12. On or about January 27, 2016, Plaintiff received her letter to sue from the Equal Employment Opportunity Commission.

13. As a condition precedent for this Court's assertion of jurisdiction over the claims set forth herein, Plaintiff has complied with all such conditions precedent or such conditions precedent otherwise have already occurred. A charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and this Complaint is filed within ninety days of her receipt of a right-to- sue letter from the Equal Employment Opportunity Commission.

## V.
## RESPONDEAT SUPERIOR AND RATIFICATION

14. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

3

## VI.
## FACTS

15. Plaintiff Jackson, Associate Professor and Associate Dean for External Affairs at Texas Southern University (TSU), Thurgood Marshall School of Law (TMSL) has worked at Texas Southern University since 1993.

16. She was appointed as an associate Dean in the fall of 2012.

17. Based on Plaintiff's prior administrative experience, Plaintiff Jackson was extended an offer to serve as Defendant Dannye Holley's Associate Dean for External Affairs, which includes supervising four departments, with approximately thirteen staffers, excluding students.

18. Notwithstanding her eagerness to implement her 10 years plus of successful administrative experiences, Plaintiff Jackson soon realized that her administrative appointment was a pretext.

19. Defendant Holley immediately began to undermine Plaintiff Jackson's authority by refusing to allow Plaintiff to supervise her staffers, a practice he did not do with male administrators.

20. Defendant Holley undermined Plaintiff Jackson's authority by refusing to require her staffers to follow the chain of command and refusing to allow Plaintiff Jackson to discipline staffers according to University policy – even though they were purposefully and knowingly out of compliance with TSU policies.

21. When Plaintiff Jackson spoke with Defendant Holley about her authority to supervise her department, Defendant Holley responded that Plaintiff was not a supervisor/Associate Dean, but instead a "facilitator."

22. As a result of Defendants' action, Plaintiff felt hostile, intimidated, humiliated and mortified.

23. When Plaintiff Jackson spoke with Defendant Holley about her compensation for the administrative component of her salary, Defendant Holley informed Plaintiff that he did not hire Plaintiff for her experience and expertise.

24. Plaintiff reported the pay issue to former Provost Ohia that Defendant Holley was paying Plaintiff less than all of the other associate Defendants despite having the same or less qualifications.

25. Plaintiff Jackson has continuously communicated with Defendant Holley about her discrepancy in compensation when comparing with other male counterpart since fall 2012.

26. However, it was not until January 2016, two weeks before a fact-finding team visit by the ABA, the Law School's accreditation agency that Defendant Holley acknowledged to Plaintiff Jackson that she was being underpaid.

27. Defendant Holley confirmed his error with the VP of the University's Human Resources Department immediately before the American Bar Association's (ABA) visit to TMSL to investigate issues of gender discrimination and the disparate treatment applied to women at TMSL; the ABA flagged TMSL in its last Sabbatical Visit in 2008, and again in its most recent Sabbatical Visit in 2015/16 based on contravention of the ABA's gender provision, which led to/required a follow-up "Fact Finding" investigation by an ABA fact finding team.

28. Defendant Holley repeatedly refuses to allow Plaintiff Jackson to reprimand employees who consistently breach the University's leave policies and procedures.

29. Defendant Holley has bypassed Plaintiff Jackson with dealing with her subordinates, giving her minimum authority, which has decreased her ability to be affective with her staffers.

30. Defendant Holley has basically usurped all of Plaintiff Jackson's authority. At one point, Plaintiff's autoimmune system was impacted by the stress caused by Defendant Holley's

actions and the staffers' lack of overall respect for the chain of command; the staffers' failure to follow the chain of command is a direct result of Defendant Holley's conscripting the Plaintiff's staffers, i.e., having them bypass Plaintiff, which further erodes her authority and effectiveness.

31. Despite repeated request and demands for fairness, Defendant's action continued to be bias against female employees, including the Plaintiff in this case.

32. In late 2013, Plaintiff Jackson and several TMSL female faculty members met with President Rudley.  Unbeknownst to the female faculty members, President Rudley invited Defendant Holley to attend the meeting. President Rudley classified Defendant Holley as "The Victim," and Defendant Rudley stated that was the reason he invited Defendant Holley, "The Victim" to the meeting.  President Rudley also angrily stated that he knew that Plaintiff Jackson had filed an EEOC complaint and that he informed General Counsel that his presence was not needed and that President Rudley could handle Plaintiff Jackson.

33. Although the female faculty thought that the meeting was to discuss the decades-long gender bias pattern and practice issue at the Law School, the meeting quickly disintegrated.  The meeting was very hostile and unprofessional.  President Rudley was visibly upset.

34. Immediately following the meeting with President Rudley and Defendant Holley, the retaliation began and intensified after Plaintiff Jackson amended her EEOC complaint to include retaliation.

35. Plaintiff Jackson is not privy to new hire(s) until approached by the Director of Administration to sign paperwork as immediate supervisor as required by the University's policy requiring the immediate supervisor's signature for processing.   The only staffer that consistently sought Plaintiff Jackson's supervisory advice and properly recognized her

6

authority was placed on a performance improvement plan – PIP, removed from the plan prior to the end date, and ultimately fired.  All stages were spearheaded by Defendant Holley. Plaintiff Jackson was informed at the 11th hour of Defendant Holley's irreversible decisions. The most shocking aspect of the decision was when at the very same moment that Plaintiff was communicating/negotiating relief for the staffer/employee, Plaintiff was called by a colleague who informed Plaintiff that the University Police was in the building escorting the employee out of the building.  This action/decision occurred even though Plaintiff had pleaded with the Defendant Holley to at least inform Plaintiff of any further action regarding the employee.  In the presence of the other employees in Plaintiff's department it was obvious that Plaintiff's authority was limited and had once again been undermined. Everyone that day again realized that Defendant Holley had micro-managed Plaintiff's department.  Defendant Holley, once again, cut Plaintiff out.

36. Defendant Holley has cut out Plaintiff Jackson's decision-making authority and continues to cut out her authority by not allowing her to participate in meetings with her direct staffers and by not being included in emails pertaining to planning and preparation.

37. Defendant Holley has allowed Plaintiff Jackson's staffers to enter into several substantial contracts in absence of Plaintiff Jackson's knowledge or opportunity to vet said contracts even though Plaintiff's area of expertise is contract law; this decision also sends a clear message to Plaintiff's staffers that Defendant Holley has the authority, not Plaintiff – who is their direct supervisor.

38. Defendant Holley and University Administration approve travel requests from Plaintiff Jackson's staffers without Plaintiff Jackson's knowledge, cutting her out of any authority to review and approve the requests.

39. As recent as March 9, 2016, Defendant Holley selected the candidates to interview for an open position in Plaintiff Jackson's department, refusing to interview any applicants recommended by Plaintiff Jackson.  Albeit Plaintiff Jackson's years of supervisory experience and departmental expertise, Defendant Holley intentionally cut Plaintiff Jackson out of any pay increase and promotion.

40.  Plaintiff Jackson started her contractual relationship with TSU as a tenure-track professor in the fall of 2006.

41. Plaintiff/Professor Faith J. Jackson received the required MAJORITY faculty vote (19-15) to be promoted to full professor; "The faculty of each department shall be the primary judge of the qualifications of its members…"

42. After Plaintiff/Professor Faith J. Jackson received a favorable majority vote, Defendant Holley applied a non-existent external review process, which is not synonymous with a dean's independent review.

43. Even if "external review" is stretched to be recognized as the same as an "independent review," Defendant Holley sent Plaintiff Jackson's article without her knowledge to a non-lawyer personal friend to perform an external review.

44. The reviewer has received compensation from Defendant Holley in the past as a presenter at TMSL.  This bias relationship is not the protocol; it defies "best practices" in the academy.

45. Defendant Holley never produced a written report.

46. Written report was never received by Plaintiff Jackson; Plaintiff Jackson never afforded the opportunity to rebut the written report, which is part of "best practices" in the academy and mandated by the University Faculty Manual.

47. TSU Faculty Manual states that "a candidate also has a right to review and provide a written response to any evaluation made…"

48. Defendant Holley never provided the University Rank, Tenure, and Salary Committee with a written report.

49. In spite of receiving the MAJORITY faculty vote and a favorable peer review report from a senior professor, who is an expert in the field Plaintiff wrote about, by design, Defendant Holley sent Plaintiff Jackson's article without her knowledge to a non-lawyer personal friend to perform an external review.

50. As of the date this complaint was filled, Defendant Holley has not provided and Plaintiff Jackson has never received a written report.

51. The TMSL faculty and the candidate / Plaintiff Jackson were not aware of the external review process and its application by the Dean.

52. No other candidate who sought tenure/promotion was subjected to an external review.

53. Defendant Holley knowingly and directly violated the faculty manual throughout the course of Plaintiff Jackson's application process.

54. On March 26, 2013, Defendant President Rudley's issued a Promotion and Tenure Review Process Memo to TSU Academic Deans and faculty encapsulating the problems that persist at Texas Southern University, especially as they relate to women and TSU's flawed and tumultuous rank and tenure process.

55. In February 2013, Defendant Holley, through TMSL's Rank and Tenure Committee Chair, requested the adoption of an External Review Process after Defendant Holley applied an external review process to Plaintiff Jackson.

56. In May 2013, TMSL adopted the External Review Process/protocol for the process of conducting outside review of faculty scholarship as requested by Defendant Holley.

57. There is no Legitimate Nondiscriminatory Reason – "LNDR" why Defendant Holley applied a process that did not exist to Plaintiff Jackson, but not to any other candidates.

58. At the direction of University Administration/Provost Ohia/Chief Academic Officer and per the University Faculty Manual Plaintiff Jackson appealed Defendant Holley's decision directly to Provost Ohia rather than the University Rank, Tenure and Salary Committee, which was an alternative internal appeals option.

59. After accepting, hearing, and considering Plaintiff Jackson's appeal, University Administration/Provost Ohia changed his mind and informed Plaintiff Jackson's of his volte-face.

60. Defendant President Rudley "rubberstamped" Defendant Holley's decision and his application of an external review process to Plaintiff Jackson notwithstanding Plaintiff's receipt of the majority faculty vote and knowing that Defendant Holley had knowingly and willfully applied a different rule and different processes and procedures to Plaintiff Jackson's application process that was not in existence until after Plaintiff Jackson's application for promotion; a direct violation of the University Faculty Manual.

61. Plaintiff Jackson appealed her application to the University Board of Regents, which upon recognizing the merits of Plaintiff Jackson's appeal and the failure of Administration to follow University Rank, Tenure, and Salary procedures charged the University Rank, Tenure, and Salary Committee to consider the merits of Plaintiff Jackson's appeal.

62. The University Rank, Tenure, and Salary Committee refused to hear Plaintiff Jackson's appeal claiming it lacked jurisdiction, in spite of the University Board of Regents' edict.

63. The University Board of Regents discussed Plaintiff Jackson's appeal in executive session of its August 2013 board meeting; however, the Board failed to take any action, and did not communicate its decision/actions in writing or verbally to Plaintiff Jackson.

64. Plaintiff Jackson was denied a fair application for promotion process; Plaintiff Jackson was denied her due process according to the University Faculty Manual.

## VII.
## UNLAWFUL DISCRIMINATION ON THE BASIS OF GENDER and TITLE VII

65. Defendant TSU, by and through such Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of her gender, race, color and national origin.

66. Defendants violated Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on sex/gender.

67. The unlawful employment practices of Defendant, specifically the discrepancy in pay with respect to other gender and the retaliation toward the Plaintiff by the defendant has created a hostile and discriminatory working environment.

68. Defendant TSU, by and through such Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, *et. seq.*.

69. Defendant TSU, by and through such Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to other male employees

11

similarly situated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, *et. seq.*

70. Defendant TSU by and through such Defendant's agents, discriminated against Plaintiff on the basis of her gender, being a female, with malice or with reckless indifference to Plaintiff's federally-protected rights.

## VIII.
## UNLAWFUL RETALIATION

71.  Defendants, individually and in concert with others, by and through such Defendants' agents, instituted a campaign of unlawful retaliation against Plaintiff that included, but was not limited to, creating a hostile work environment, harassment, denial of promotion and/or salary increase. Such retaliation was and is due to Plaintiff exercising her rights by opposing Defendants' discriminatory employment practices, which were based on applicant's gender. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered damages for which Plaintiff herein sues.

72. By the various individual and combined acts and omissions set forth herein, Defendants, by and through such Defendants' agents, acting under color of state law, deprived Plaintiff of her federally-protected rights, including his right to due process of law and equal protection under the law, as set forth in sections 1 and 5 of the Fourteenth Amendment to the Constitution of the United States, and as otherwise and further set forth herein. As a direct and proximate result of such deliberate acts and omissions, Plaintiff suffered damages for which Plaintiff herein seeks damages pursuant to 42 U.S.C. § 1983.

73. By the various individual and combined acts and omissions set forth herein, Defendants, by and through such Defendants' agents, acting under color of state law, deprived Plaintiff of her federally-protected rights, including her right to due process of law and equal protection

12

under the law, as set forth in sections 1 and 5 of the Fourteenth Amendment to the Constitution of the United States, and as otherwise and further set forth herein. As a direct and proximate result of such deliberate acts and omissions, Plaintiff suffered damages for which Plaintiff herein seeks damages pursuant to 42 U.S.C. § 1983.

74. Defendants violated and continue to violate Title VII's prohibitions on retaliation against a person who falls within a protective class who files a sex/gender-based EEOC discrimination complaint to correct unlawful employment practices/mistreatment and provide appropriate relief.  After Plaintiff, who falls within a protective class, filed an EEOC complaint, Defendants began to retaliate against Plaintiff, which contravenes Title VII prohibition. Defendants cut out Plaintiff through subtle and overt adverse employment actions and created a hostile work environment.  Defendant Holley allows/encourages Plaintiff's staffers to disregard protocol, condemn Plaintiff's leadership, and most of all allows staffers to engage in hostile office rants:  one staffer called the Plaintiff the HNIC; a staffer encourages other staffers, in open office discussions, to join the "Team Against Faith Campaign." Plaintiff Jackson's first name is Faith.  These incidents and remarks are not isolated because they occur on a regular, almost daily basis; the hostility led to the firing of one of Plaintiff's staffer's; a staffer that the Dean was unable to conscript.  The Defendants' retaliation is beyond isolated; it is not only pervasive but also general knowledge amongst TMSL employees – they recognize that Defendant Holley wants Plaintiff Jackson out, and they wonder how Plaintiff Jackson has been able to maintain her professional demeanor.

## IX
## VIOLATION OF STATE LAW

75. Defendants, by and through such Defendants' agents, engaged in an unlawful employment

practice because they discriminated against Plaintiff in connection with her compensation and/or other terms, conditions, and privileges of employment, ultimately discharging Plaintiff from employment on the basis and because of Plaintiff's gender. By their individual and combined acts, such Defendants limited, segregated, and/or classified Plaintiff in a manner that deprived and tended to deprive her of employment opportunities and adversely affected her status as an employee. Plaintiff therefore seeks redress from such Defendants pursuant to the Texas Labor Code § 21.001, *et seq.*

## X.
## BREACH OF CONTRACT

76.  Defendants breached and violated TSU protocol/policies and procedures as well as the TSU Faculty Manual, which caused Plaintiff to suffer serious professional harm, including but not limited to reputation, character, and future opportunity for advancement in the legal academy – opportunity to rise to the level of Dean.

77. Defendants violated the non-discrimination policies and procedures of TSU and the American Bar Association (ABA), the law school's accreditation agency.   This violation impacted Plaintiff Jackson's career and will cause immeasurable and long range, negative implications on Plaintiff's career.

78. Defendants breached contract with Plaintiff based on a valid contract with TSU.  As an Associate Professor with tenure, Plaintiff has a valid employment contract with TSU evidenced by the University Faculty Manual.  The University Faculty Manual contains provisions as to benefits, promotions, salary, and anti-discrimination.  Plaintiff was provided with no negative reviews from the off set of her tenure in 2006.  In 2012, Plaintiff received her first and only negative tenure-track review, but received no opportunity to rebut.  The University Faculty

Manual specifically sets out provisions in the event of violations of the University Faculty Manual by academic administrators.  The University failed to follow its own policies and procedures as outlined in the University Faculty Manual requiring that University officials shall take corrective action where a violation has been found.  Plaintiff has actively sought a remedy spanning a three year time frame to present because TSU administrators have continually thwarted Plaintiff's ongoing attempts to resolve the issue according to TSU policy/procedures, i.e., internal remedy exhaustion.  TSU Administrators have used the 'moving target' method to prolong and frustrate the process.

## XI
## Damages

79. The damages suffered by Plaintiff Jackson include lost wages as well as compensatory damages for the injuries she suffered at the hands of the Defendants, including, but not limited to her mental anguish.

## XII.
## Prayer for Relief

Plaintiff Jackson asks this court to enter a judgment:

1. Declaring that the acts and practices describe in Plaintiff's Complaint are in violation of Title VII;

2. Enjoining and permanently restraining these violations of Title VII.

3. Awarding Plaintiff the promotion she is entitled;

4. Directing Defendants to pay Plaintiff actual and compensatory damages that she suffered – past and future;

5.   Awarding Plaintiff pre-judgment interest on the amounts owed to Plaintiff at the maximum rate allowed by law;

6.   Awarding Plaintiff the costs of this action, together with reasonable attorney's fees and expert witness fees;

7.   Awarding Plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.   Awarding plaintiff such other relief, legal or equitable, as may be warranted.


Respectfully submitted,


**BUI & NHAN, P.L.L.C.**
3921 Ocee
Houston, Texas 77063
Tel. (713) 783-2466
Fax. (713) 783-0787


By: ___/s/Scott K. Bui_____
Scott K. Bui
State Bar No. 00789185
Federal I.D.:17601

**ATTORNEY FOR PLAINTIFF**